UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RAISHAWN KEY
        Plaintiff

v.

CITY OF AUGUSTA,
ROBERTA FOGG,
WILLIAM BRIDGEO,
SUE GOSSELIN, &
JOHN DOES ## 1 – 4,
        Defendants

Case No. 1:17-cv-00007-JDL

## OPPOSITION TO MOTION TO DISMISS

On June 30, 2017 the Clerk of Court docketed a letter from Plaintiff requesting to dismiss this matter without prejudice (the "Motion")(doc. # 17). Defendants oppose the pending motion to dismiss, and desire to proceed to a ruling on the merits.

### Background

Plaintiff's Complaint was filed on January 5, 2017, alleging voting rights violations against the City of Augusta, its officers and employees, and four fictitious "John Doe" defendants. *See generally* Complaint (doc. #1). Although less than clear, the Complaint suggests Plaintiff's belief that he was discriminated against due to his race and/or incarcerated status. *Id.* at prayer for relief, ¶¶ A-B (page 3). The crux of Plaintiff's complaint is an allegation of racial and/or prisoner discrimination as more fully stated in his (unsigned) interrogatory answers, which explained that: "Plaintiff believes that because of his status as a felon and African-

American, he was discriminated against efforts to vote." Interrogatory Response # 9 (true and accurate copy of unsigned interrogatory responses are attached as Exhibit 1).[1]

As explained by the Court in its Order Denying Motion to Appoint Counsel, the facts underlying Plaintiff's claims occurred in a limited time period, "and the relevant facts are known to Plainitff." Doc. # 7, at *1. Nevertheless, Plaintiff and Defendant have engaged in significant discovery considering the relatively limited scope of the lawsuit. By way of example, Plaintiff requested nine categories of documents, propounded eight interrogatories, and four requests for admissions. *See* Plaintiff's First Consolidated Discovery Requests (unsigned) (true and accurate copy of requests are attached as Exhibit 2).

Acting in good faith as required under the Rules, Defendants carefully analyzed Plaintiff's discovery requests to give him the information to which he is entitled in this lawsuit. Defendants objected and responded in due course, with sworn interrogatory responses, answers to admissions, and production. All told, Defendants' initial production response on June 9, 2017 consisted of 16 pages of responses and objections, with 89 pages of production. *See* Exhibit 3 (discovery transmittal letter from defense counsel to Plaintiff, June 9, 2017, containing initial responses & production (actual documents omitted for brevity)). The document production was supplemented when additional documents became available, and sent to Plaintiff as soon as the documents were reasonably available. *See* Exhibit 4 (discovery transmittal letter from defense counsel to Plaintiff, dated June 20, 2017, enclosing requested documents up to page # 360 (actual documents omitted for brevity)). As sixteen pages of responses and hundreds of pages of production make clear, Defendants took very seriously their obligations to the Court and to the

---

[1] By attaching exhibits to this opposition Defendants do not seek to turn these pleadings under Rule 41 into a summary judgment proceeding under Rule 56. Instead, the exhibits are presented merely to show the Court that Defendants have a winning defense that is ready for adjudication, and ask to be permitted to do so. *See* text discussing summary judgment timing, *infra.*

Plaintiff in this lawsuit, properly and fully responding to Plaintiff's discovery requests. In response to Defendants' full participation in the discovery process, the Plaintiff now moves to terminate his lawsuit.

## **Legal Standard**

Plaintiff's letter (doc. # 17) was docketed as a motion to dismiss, and should be understood under F.R. Civ. P. 41(a). In considering such a voluntary motion to dismiss, the First Circuit prescribed a flexible analysis, including factors such as "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 160 (1st Cir. 2000)(citations and internal quotation marks omitted). "Although courts need not analyze each factor or limit their consideration to these factors, they serve as a guide for the trial judge." *JRA Architects & Project Managers, P.S.C. v. First Fin. Grp., Inc.*, 375 F. App'x 42, 43 (1st Cir. 2010)(per curiam)(internal citations omitted). If a District Court is inclined to grant voluntary dismissal under Rule 41, it may be appropriate to impose conditions on the moving party "such as paying the opposing party's attorneys' fees or costs." *Id.* (vacating & remanding for failure to consider imposing conditions against moving plaintiff).

As will be seen below, each of the four factors weighs in favor of denying the motion to dismiss. Each factor is weighed in turn below.

## I.     Defendants' Effort and Expense

As more fully detailed above, Defendants timely investigated the Complaint, answered it, and engaged in discovery, both propounding affirmative requests and timely responding to Plaintiff's discovery requests and supplementing them as well. This involved a considerable amount of time and resources, taking City of Augusta officials and employees away from their ordinary work on behalf of the City's residents, while incurring legal fees along the way. Moreover, the City conferred with the Maine Secretary of State's office to fully and adequately investigate the underlying issues, further imposing on public servants in order to meet the obligations to this Court and to the Plaintiff in the context of his lawsuit. This coordination between several public offices represents an expenditure of taxpayer resources greater than the average lawsuit between private litigants.

The Plaintiff clearly envisions bringing a new lawsuit at some later date. *See* doc. # 17. Dismissal now with a new lawsuit at some later date would mean all the time and resources currently expended by Defendants and other government officials, at taxpayer expense, would be wasted. Worse, starting over in a subsequent lawsuit will necessarily tread the same ground again, once again tying up public employees at taxpayer expense. The Plaintiff should not be allowed to incur public funds at his sole convenience in this way.

## II.     Plaintiff's Lack of Diligence

The Defendants concede that Plaintiff filed his papers timely in this lawsuit so far, and although he has not complied with some of the discovery requirements (such as signing and/or notarizing discovery responses), he has affirmatively pursued discovery in the ordinary course. However, Plaintiff's lack of diligence can be seen through his simple failure to acknowledge

reality, forging ahead with a clearly meritless lawsuit after receiving facts that contravene the basis for his lawsuit. While it may yet be premature to move for sanctions, below are just two examples of Plaintiff's obvious failures to acknowledge clear facts, and exhibit Plaintiff's lack of diligence by failing to pursue his lawsuit in good faith.

> A. **There is no such street as listed by Plaintiff in his voter registration card**.

The root of Plaintiff's allegations is that he believes he was improperly denied the right to vote. As described in his complaint, Mr. Key attempted to register to vote based on a claimed previous address at "Noyce CT" in Augusta. Complaint, ¶¶ 14 & 17 (page 2) (doc. # 1). The documents exchanged in discovery confirm that Mr. Key did, indeed, list a "Noyce CT" as his former residence in his voter registration application.

Under Maine state law, an incarcerated individual may register to vote "in any municipality where that person has previously established a fixed and principal home to which the person intends to return." 21-A M.R.S. § 112(14). Therefore, had Mr. Key provided a valid address to the voting registrar, he would have been duly registered to vote. However, *there is no such street as Noyce CT (Noyce Court) in Augusta*, so his attempt to register to vote was properly denied.

Attached to this filing as Exhibit 5 is a true and accurate copy of a page marked "Defendants 79" from the City's production. This page is an excerpt of the official, alphabetized street name listing from the City. The street listing shows there is no street at all called "Noyce," so Mr. Key's registration failed to accurately identify the name of the street. There are, however, four different streets that are called by some variation of the potential homophone "Noyes." There is a Noyes Street, Noyes Place, Noyes Court, and Noyes Street Place. Having spelled the

name of his alleged street incorrectly, there is no telling whether Mr. Key might have gotten the designation wrong as well (Street, Place, Court, or Street Place); the Clerk correctly determined that the purported address was invalid. *See* Defendants' Responses to Plaintiffs' Requests for Interrogatories, #1 (responses attached as Exhibit 6).

Despite this discrepancy being pointed out to Mr. Key in discovery, he persists in denying the clear fact that there is no street of any kind called "Noyce" in Augusta. *Compare* Exhibit 1, page 2 (Responses For Requests For Admissions, unsigned)(denying requests #3-4), *with* Exhibit 6 (Defendants' discovery requests, excerpt)(admissions about "Noyce CT" and "Noyce Court"); *but see* F.R. Civ. P. 36(a)(3) (failure to properly deny constitutes an admission).

B. **There are no "John Doe" Defendants as Plaintiff Alleges**.

Mr. Key decided to name four phantom "John Doe" defendants. *See* Complaint, ¶¶ 8-11 (page 2)(doc. # 1). When pressed in discovery, Mr. Key explained his belief that "[a]s in any bureaucracy, there are multiple layers of supervision, management, and authority and [P]laintiff believes this to be true for the City of Augusta." Ex. 1 (Plaintiff's Response to Interrogatories, # 10). In discovery, the City explained under oath how only Defendants Fogg and Broz (formerly Gosselin) handled Plaintiff's registration application. Ex. 6, Defendants' Interrogatory Response # 6. Clearly, there was no basis to name four phantom defendants, and Plaintiff should have dismissed them as soon as he realized there was no good faith basis for naming them.

All told, Mr. Key has ample information available to him to make clear that any error causing his failure to register to vote was his own, and that there are no "John Doe" defendants at all. Nevertheless, by this lawsuit Plaintiff attempts to affix to the City liability for his own

mistake, and to chase phantoms. Plaintiff's inability to recognize and take responsibility for his own mistake must constitute a lack of diligence in understanding the likelihood of success on his claim. His pursuit of purely fictitious defendants even after contrary facts come to light may be ultimately sanctionable, but for present purposes ought to be considered a lack of diligence in properly pursuing his claims in this matter.

### III.     Insufficient Explanation in Plaintiff's Motion

Plaintiff's purported grounds for seeking dismissal are insufficient because this Court has already ruled against these same concerns. Plaintiff avers that he is "unable to effectively mount and execute a legal strategy" in this case. *See* Motion (doc. # 17). However, the Court has already ruled on that very issue. In denying Plaintiff's request for appointed counsel, this Court previously explained that "Plaintiff's claim is based on events that occurred during a limited period of time, and the relevant facts are known to Plaintiff." Doc. # 7, at *1. Moreover, "through the allegations in the complaint, Plaintiff has demonstrated a knowledge of relevant legal issues." *Id.* at *2.

During the course of this matter so far, Plaintiff requested and subsequently received a moderately large amount of information, commensurate with his own searching (partly objectionable but not overbearing) discovery requests. By that discovery, Plaintiff could only have come to a better understanding of the tenuousness of his claims. Nothing could have changed with respect to Plaintiff's sufficient knowledge of the facts or his ability to grasp the law. As this Court already ruled that Plaintiff is fully capable of proceeding in this matter contrary to the grounds Plaintiff now asserts in his Motion, the Plaintiff's grounds for voluntary dismissal are insufficient. This Court should deny the Motion and let this matter proceed to a

ruling on the merits. *Cf. United States v. Matthews,* 643 F.3d 9, 13 (1st Cir. 2011)(applying law of the case doctrine to bar arguments previously obviated on appeal).

### IV.     Summary Judgment

The fourth factor analyzed under *Urohealth* is whether or not summary judgment is pending at the time. *Urohealth,* 216 F.3d at 160. The docket shows, and Defendants readily concede, that Defendants have not yet filed summary judgment. However, Defendants are prepared to file for summary judgment, and desire to move this matter forward towards a ruling on the merits. Even as Plaintiff filed his Motion, Defendants were finishing their investigation in due course, gathering the final facts in preparation for a summary judgment filing. *See, e.g.,* Scheduling Order, at *2 (doc. # 14)(discovery deadline is August 23, 2017; dispositive motion deadline is September 13, 2017). With the investigation now complete, Defendants are prepared to move for summary judgment and offer the following showing in support of their desire to proceed to summary judgment. *Cf.* Local Rule 56(h).[2]

Defendants are prepared to move for summary judgment because the facts show that there was no discrimination, primarily in the following two ways: (A) Plaintiff's voter registration denial was a result of his own mistake, and was required by applicable law and regulation; and (B) there is a very relevant counter-example that clearly defeats Plaintiff's claims of discrimination. Each of these is addressed in turn below.

---

[2] Defendants understand that the Rule 56 pre-filing notice and conference do not strictly apply in this matter. *Compare* Local Rule 56(h)(applying only to Standard Track cases) *with* Scheduling Order, at *1 (doc. # 14)(this case is on the Prisoner Track), *and* F.R. Civ. P. 26(a)(1)(B)(iv); prisoner cases like this are among the exceptions incorporated into Local Rule 56(h). However, given the procedural posture of this case where Plaintiff moved to dismiss before Defendants filed for summary judgment, Defendants believe it will aid the Court to have a sense of the grounds upon which Defendants are prepared to move for summary judgment.

A.   **Plaintiff's Voter Registration Denial Was a Result of His Own Mistake**.

Plaintiff's failure to list a valid address on his voter registration card was discussed *supra*, in the context of Plaintiff's lack of diligence in his failure to recognize his own mistake. For a more complete explanation of the interplay between the databases and the requirement to independently verify both a would-be voter's identification as well as valid residence, *see* Ex. 6 (Defendants' interrogatory responses), #1. As shown, the City was required to verify a valid address, and could not do so based on Mr. Key's submission and was therefore required to deny Plaintiff's application.

B.   **The Counter-Example Shows there Was No Discrimination**.

Plaintiff completed his voter registration documents in a registration drive at the Maine State Prison. As it happens, another inmate also filled in his registration information on the same day as Mr. Key, and it was forwarded to the City of Augusta, and was probably received in the same mailing as Mr. Key's registration. A redacted but otherwise true and accurate copy of this counter-example registration card is now included as Exhibit 7.[3] As can be seen in Exhibit 7, the fellow inmate inadvertently filled in the prison's address in Warren, Maine, then crossed it out to enter his previous address in Augusta (the redacted portion). This fellow inmate was registered to vote prior to the 2016 election, and the City of Augusta sent him a ballot.

The only relevant difference between Mr. Key and this counter-example inmate was that the fellow inmate who submitted the original Exhibit 7 registration provided the Registrar with an accurate street address within Augusta. The Registrar was therefore able to properly enroll the

---

[3] The document is heavily redacted in order to protect the privacy of this other inmate who is a registered voter; year of birth and former state of residence are provided to differentiate this anonymous inmate from the Plaintiff. *See, e.g.,* 21-A M.R.S. § 196-A(1)(F)(allowing the release of non-identifying statistical information). If desired, a non-redacted version of this counter-example registration card may be provided to the Court under seal.

other inmate, and sent him a ballot to vote. In addition to being a fellow inmate, the now-registered fellow inmate happens to also be African-American, like Mr. Key. Recall that Mr. Key is claiming discrimination based on his incarcerated status and/or his race. *See* Complaint at prayer for relief, ¶¶ A-B (doc. #1, page 3). With identical status as inmates, and belonging to the same racial group, the only relevant difference between Mr. Key and the anonymous fellow inmate is whether each would-be voter listed a valid address within Augusta. Mr. Key's failure to provide a valid address is left as the only explanation for his failed attempt to register to vote. He will be unable to prove discrimination of any kind.

As seen in the foregoing, the *Urohealth* factors weigh against allowing the Plaintiff to dismiss this matter without prejudice. *Urohealth,* 216 F.3d at 160. In light of Plaintiff's own clear mistake in registering to vote, and the highly probative counter-example, Defendants strongly believe they will prevail on summary judgment. Such a motion has not yet been filed because the City was completing its investigation, and before Plaintiff filed in Motion there was yet ample time in the scheduling order to file such a motion.[4] Defendants respectfully request the Court take Plaintiff's current Motion under advisement pending a ruling on summary judgment. Defendants suggest the Court issue an "under advisement" order on the current Motion, and in that order instruct Defendants to file their summary judgment motion within 21 days; after such filing the Court could properly consider authenticated facts on a full summary judgment record.

---

[4] Defendants have not yet prepared a summary judgment motion in order to save additional costs. The present opposition was required in any event for Defendants to proceed in this matter. Defendants did not want to incur the cost of both an opposition and a summary judgment motion should the Court allow dismissal. As discussed above, Defendants are prepared to file for summary judgment should the Court indicate a willingness to consider it.

**Alternative: Condition Dismissal on Payment of Costs & Expenses**

In the alternative, should the Court be inclined to grant Plaintiff's motion to dismiss without prejudice, such dismissal should be conditioned on Plaintiff paying Defendants' costs and expenses, including reasonable attorney's fees. A recent example of such treatment comes from the Eighth Circuit. *Blaes v. Johnson & Johnson*, 858 F.3d 508, 516 (8th Cir. 2017), (remand to consider awarding costs and fees on motion to dismiss without prejudice), *reh'g and reh'g en banc denied* (Jun 28, 2017); *see also JRA Architects*, 375 F. App'x at 43. Such a conditional order of dismissal would go a long way to rectifying the investment of time and resources that Defendants have made in this lawsuit to date.

WHEREFORE, Defendants request this Court deny Plaintiff's motion to dismiss without prejudice; in the alternative, Defendants request this Court take Plaintiff's motion under advisement and direct Defendants to file summary judgment within 21 days; in the alternative, Defendants request this Court condition a dismissal without prejudice on Plaintiff first paying all of Defendants' costs and reasonable attorney's fees incurred to date.

Dated:  July 21, 2017                    */s/ Mark V. Franco*
                                          Mark V. Franco

                                          */s/ Timothy E. Steigelman*
                                          Timothy E. Steigelman

                                          Drummond Woodsum
                                          84 Marginal Way, Suite 600
                                          Portland, ME  04101-2480
                                          Telephone (207) 772-1941
                                          Facsimile (207) 772-3627
                                          mfranco@dwmlaw.com
                                          tsteigelman@dwmlaw.com

| | Table of Exhibits |
|---|---|
| 1 | Plaintiff's Response to Defendants' First Discovery Requests (unsigned) |
| 2 | Plaintiff's First Consolidated Discovery Requests |
| 3 | Transmittal letter dated June 9, 2017 from defense counsel to Plaintiff |
| 4 | Transmittal letter dated June 20, 2017 from defense counsel to Plaintiff |
| 5 | Defendants 79 (excerpt of City of Augusta street listing |
| 6 | Defendants' Responses to Plaintiffs' Requests for Interrogatories |
| 7 | Voter Registration Application (redacted) |

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2017 I electronically filed the above papers with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record. On the same date I also sent a copy of the above papers by First Class U.S. Mail to the Plaintiff at his last known address:

>Mr. Raishawn Key
>Maine State Prison
>807 Cushing Road
>Warren, ME 04864

>*/s/ Timothy E. Steigelman*
>Timothy E. Steigelman