UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RAISHAWN KEY
          Plaintiff

v.

CITY OF AUGUSTA,
ROBERTA FOGG,
WILLIAM BRIDGEO,
SUE GOSSELIN, &
JOHN DOES ## 1 – 4,
          Defendants

**Case No. 1:17-cv-00007-JDL**

## DEFENDANTS' RESPONSES TO PLAINTIFF'S REQUESTS FOR INTERROGATORIES

1.     State in detail the procedure utilized by the City of Augusta in processing absentee ballots.

RESPONSE: In general, any would-be voter must demonstrate proof of identity and proof of residency in order to be registered to vote. Identity can be proven by a government-issued photographic identity card or passport, a birth certificate or Social Security Card, or other official documents.

Once a person proves their identity, their residence must be checked. Residence can be shown a number of ways, but the most often is a statement from the would-be voter writing out their address. Other alternate forms of proof of residence include showing an address where a motor vehicle is registered, or the residential address where a person receives mail. Proof of residence is important because not only is residency a requirement to register to vote, but in any election where there are municipal and state elections (e.g. City Council, State Representative), the ballot is different depending upon the City ward in which the voter resides. By verifying the actual location of the would-be voter's address, the City knows how many of each type of ballot to print before Election Day, and each voter is able to vote for the local representatives that directly represents him or her. The city of Augusta has three state representative districts (83, 85 and 86) as well as four City Council wards. It is critical to accurately determine which ward and state representative district the voter resides in, as to provide the voter with the correct ballots for any given election.

A would-be voter typically shows a drivers' license or passport to prove identity. That identifying information is put into a database called the CVR (Central Voter Registration) system. Typically, the CVR data successfully verifies a would-be voter's identity, in which case

the CVR has confirmed identity. CVR does a verification of Maine driver's license numbers to verify identity, but it cannot verify other items used to prove identity.

The Registrar or Deputy Registrar verifies the proof of residency in their municipality. If the address provided by the voter is a valid address, then the CVR database confirms both identity and residency. CVR will match the voters' address against the street list that the Registrar maintains within CVR. There are instances, however, where a would-be voter provides the City with information that is inconsistent with information in the CVR, or an address that is entirely invalid. If the street information given by the would-be voter is not in CVR, it will prompt the user (Registrar) and the registration will not be able to be entered. Sometimes this is the result of someone moving but not updating the address on their driver's license. Other times, the person simply provides an invalid address. In these cases, the CVR data is only acceptable to verify identity, but not residence. When that happens, the would-be voter must provide additional, alternate documentation to show residency. Once that additional documentation has been shown, the voter is registered to vote, in the appropriate Ward and State Representative District in the City.

In this instance Mr. Key provided proof of identity in the form of a Maine ID card, which contained an invalid address within Augusta. The voter registration application and request for absentee ballot was reviewed by a member of the Registrar's staff, Susan Broz (née Gosselin) to verify the voter's identity and residence. When that staff member reviewed the street address against the list of streets in CVR and discovered the street was not valid, she presented it to the Registrar. The Registrar then reviewed the voter registration application and all supporting documentation. The Registrar then proceeded to verify the applicant's identity (Maine ID) using the InforMe website and reviewed the Maine Bureau of Motor Vehicle data with that on the applications. Finding them consistent, the Registrar then reviewed the street address on all these documents against the street list in CVR and the City of Augusta ward map. Determining that the street listed on all these documents didn't exist in Augusta, the Registrar rejected the request.

That invalid address meant that between the copy of Mr. Key's state ID card and the CVR check of his information, the City could only confirm his identity, but not his residency. As a result, a City employee accurately informed Mr. Key by letter on November 3, 2016 that the City "cannot accept [his absentee ballot] request due to a non existing street address."


2.       State in detail the procedures utilized in verifying voter eligibility requirements including addresses. Please include any auditing measures the City of Augusta might use to ensure compliance with these procedures.

**OBJECTION: Vague; to the extent the requests seeks "auditing measures," the Registrar's procedures are not subject to audit in the same manner as a publicly traded company's finances, so it is not clear what "auditing measures" the request seeks. To the extent this request seeks publicly available information contained in state statutes, City ordinances, or on the City website, the parties' relative access to the relevant information is sufficiently comparable to not require its production in discovery.**

2

RESPONSE: Subject to and without waiving the objection, please see Response #1, *supra*. Further, the closest thing to "auditing measures" as requested are the several levels of oversight of the voter registration process, both from within and without City government. As the City Clerk, Ms. Roberta Fogg supervises the employees who work in her office. Ms. Fogg, in turn, is overseen by the Assistant City Manager and Finance Director. Ultimately, City Manager Mr. William Bridgeo is overall responsible for the oversight of many City employee functions, including voter registration. Mr. Bridgeo is answerable to the City Council, who in turn are answerable to the voters of the City of Augusta.

In addition, there is a registration voter appeals process administered by the City, to which an aggrieved would-be voter can bring complaints relative to voting registration. The Maine Secretary of State's Office provides some oversight and training of municipal voter registrations as well.

3.    State in detail the policies followed when accepting *Voter Registration and Absentee Ballot* applications from a third party.

**OBJECTION: To the extent this request seeks publicly available information contained in state statutes, City ordinances, or on the City website, the parties' relative access to the relevant information is sufficiently comparable to not require its production in discovery. To the extent this information will be produced in response to requests for production, the Plaintiff is directed to Defendants' objection & response to Request for Production #3. Fed. R. Civ. P. 33(d).**

4.    Please describe in detail the official job duties and responsibilities of all defendants with the exclusion of John Doe ## 1-4.

**OBJECTION: To the extent this request seeks publicly available information contained in state statutes, City ordinances, or on the City website, the parties' relative access to the relevant information is sufficiently comparable to not require its production in discovery. To the extent this information is being produced in response to requests for production, the Plaintiff is directed to those documents in lieu of a response;** *see* **Defendants 17-21. Fed. R. Civ. P. 33(d).**

5.    Name and describe the responsibilities of any other City of Augusta employee involved in the receiving, processing, handling, and disposition of Absentee Ballots.

RESPONSE: Other than certain of the named Defendants, there are no such "other employees" as described in this request. It should be pointed out that Ms. Gosselin's name has changed, and she is now Ms. Susan Broz.

6.      Please state the names, titles, and duties of any other person who was involved in the receiving, handling, processing, and disposition of the Plaintiff's Voter Registration application and application for Absentee Ballot.

RESPONSE: Other than defendants Fogg & Broz (née Gosselin), there are no such "other person[s]" to identify as requested.

7.      Please describe how the Plaintiff's criminal history is relevant or has any bearing with his right to vote, as guaranteed by state law.

RESPONSE: Plaintiff is alleging violation of his rights as a member of a class of convicted felons. *See* Plaintiff's Interrogatory Response # 8. By seeking to establish "his status as a convicted felon," Plaintiff has himself put his criminal history in general, and his felony conviction in particular, at issue. *Id.* Moreover credibility is always at issue, and Plaintiff's felony conviction in 2013 is admissible for "attacking [Plaintiff's] character for truthfulness." Fed. R. Evid. 609.

8.      Please state in detail how each of the defendants (excluding John Doe ##1-4) feels about a convicted felon exercising his statutorily protected right to vote.

**OBJECTION: Irrelevant; unlikely to lead to the discovery of admissible evidence.**

RESPONSE: Notwithstanding and without waiving the foregoing objection, under Maine state law the City of Augusta is a "body corporate which may sue or be sued." 30-A M.R.S. § 2002. That legislative enactment, however, does not imbue the City with sentience, emotions, or feelings. Because it is incapable of having feelings of any kind, Defendant City of Augusta is unable to respond to this request.

As for each of the named individual Defendants, their role is to serve the City of Augusta and its residents, and in so doing to follow the law. They feel it is their duty to enroll all potential voters who present the necessary information required by law, regardless of any potential voter's status as a convicted felon or otherwise.

June
Dated:    9 , 2017

William Bridgeo, City Manager

STATE OF MAINE
KENNEBEC, ss.

4

*William Bridgeo*

On this 9th day of June, 2017, the above-named ʌ appeared before me and made oath that the foregoing is true to his own personal knowledge or upon information and belief, and as to those matters based upon information and belief, he believes such information to be true.

Before me,

Notary Public/Attorney-at-Law

Name Typed or Printed                    LORETTA J. LATHE
                                         Notary Public, Maine
My Commission Expires: My Commission Expires January 24, 2021

AS TO OBJECTIONS:

DATED: June 9, 2017

Mark V. Franco, Esq., Bar No. 2967
Timothy E. Steigelman, Esq., Bar No. 4672
*Counsel for Defendants*

**DRUMMOND WOODSUM**
84 Marginal Way, Ste. 600
Portland, ME 04101
Tel: (207) 772-1941
mfranco@dwmlaw.com
tsteigelman@dwmlaw.com